Davis, C. J.
This case presents the concrete question whether a wife can be prosecuted for larceny, when she has taken and converted to her own use personal property of her husband. The case is easily distinguishable from many of the cases cited in argument, in which there appear schemes of fraud or violence of which marriage is a part or to which it is an incident, or in which the wife of a husband goes away from the other with adulterous intent, the paramour assisting in the asportation and use of the goods of the defrauded spouse, or in which a third person, without adulterous intercourse or intent, assisted in *320 appropriating and using the goods which were charged to have been stolen; because none of these elements are found in this record. The bill of exceptions tends to prove that the defendant in error, about three weeks after the alleged crime, admitted that she took the money from the safe and gave it or part of it to her mother, and that she and her husband then joined in a mortgage to secure the repayment of five hundred dollars of the amount taken to the brewery company which had become security for that amount when her husband borrowed it. The court of common pleas directed a verdict of not guilty, to which the prosecuting attorney excepted. This is the whole case as it appears of record.
The state concedes that by the common law the indictment would not be sufficient; but it is contended that, by virtue of Section 12447 of the General Code, “Whoever steals anything of value is guilty of larceny,” and also by virtue of the statutes defining the rights and liabilities of husband and wife, (Sections 7995 to 8004, General Code), the legal unity of husband and wife theretofore recognized as the foundation of the common law rule has been abrogated, so far at least as to make either spouse liable for larceny from the other.
We get very little aid in the solution of this phase of the question, from decisions in other states, because so much depends upon the legislation-peculiar to each state and its construction by the local courts. For example, in Arkansas, the constitution of 1874, Art. 9, § 7, provides as follows: “The real and personal property of any *321 femme covert in this state, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed or conveyed by her the same as if she were a femme sole; and the same shall not be subject to the debts of her husband.” The supreme court held that under that clause of the constitution a husband might be guilty of larceny of his wife’s personal property. Hunt v. State, 72 Ark., 241. Although that judgment was reached by a course of reasoning which does not seem to us to be at all conclusive, it must be conceded that it is the law of that jurisdiction. In Beasley v. The State, 138 Ind., 552, the court said: “The learned judge below held the indictment good upon the ground that the recent statutes give the wife exclusive control and authority over her personal property, and have greatly enlarged her personal rights as to the disposition thereof, making contracts and doing whatever a femme sole might do; and that the effect of such statutes is to sever the unity of person and community of property heretofore existing between husband and wife. There seems to be sound logic in this position.” It was accordingly held that under the statutes of that state the husband’s interest in his wife’s property is abolished, and he may be convicted of the larceny of her money.
On the contrary, it was held by the supreme court of Michigan, in Snyder v. People, 26 Mich., 106, in which case a husband was under indictment for burning his wife’s dwelling-house, that *322 the statutes of that state for the protection of the rights of married women did not affect the marital unity of husband and wife and did not change the common law rule that such burning would not be arson. Cooley, J., in delivering the opinion of the court, said: “As regards her individual property, the law has done little more than to give legal rights and remedies to the wife, where before, by settlement or contract, she might have established corresponding equitable rights and remedies, and the unity of man and woman in the marriage relation is no more broken up by giving her a statutory ownership and control of property, than it would have been before the statute, by such family settlement as should give her the like ownership and control. At the common law, the power of independent action and judgment was in the husband alone; now it is in her also, for many purposes; but the authority in her to own and convey property, and to sue and be sued, is no more inconsistent with the marital unity, than the corresponding authority in him.” Similar views are expressed in Thomas v. Thomas, 51 Ill., 162; Walker v. Reamy, 36 Pa. St., 410; State v. Wincroft, 76 N. Car., 38; and State v. Matthews, 76 N. Car., 41.
Common law rules have usually been founded upon sound reason and considerations of public policy; and out of this fact has grown the safe maxim that statutes derogating from the common law should be strictly construed. Keeping this maxim in mind, we have found nothing in the statutes of Ohio, and nothing has been pointed out to us, which would justify a conclusion that *323 the general assembly expressly or impliedly abrogated the common law rule that neither husband nor wife can be prosecuted for a larceny of the goods of the other; and much less an intention to do so. Indeed we doubt that any member of that body had in contemplation such a result when he voted for the statutes which protect the individual rights of married people. The legislature was contemplating the expressed purpose of the statutes, and that only. They were not at that time considering crimes and criminal procedure; and .surely they cannot be presumed to have intended a thing which they did not clearly express and which is fraught with such far-reaching and radical consequences to the law of the domestic relations, for the abrogation of the doctrine of the legal unity of husband and wife, when pushed to its logical conclusion, would not only create crimes where there were none before, but would also authorize a husband or wife to maintain civil actions for tort against the other, such as actions for personal injuries, assault, false imprisonment, or slander (15 Am. & Eng. Ency. Law, 2 ed., 857) thus multiplying a hundredfold the unhappy differences which have to be settled in the divorce courts. We cannot assume that the legislature intended this without very clear evidence of such an intention in the language of the statutes.
Since the foregoing was written we have come upon a recent opinion of the Supreme Court of the United States, Thompson v. Thompson, 218 U. S., 611, in which the court held that the common law relation between husband and wife was *324 not so far modified by Section 1155 of the District of Columbia Code as to give to the wife a right of action to recover damages from her husband for an assault and battery committed by him upon her. The code section referred to authorizes married women “to sue separately for the recovery, security or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried.” The court’s construction of this statute is that it was not intended to give to a married woman a right of action against her husband, but to allow the wife to maintain in her own name such actions in tort as at common law must be brought jointly by the husband and wife; and it was remarked within the power of the legislature to make this by Justice Day, in the opinion: “Conceding it to be alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention.”
Morever, the unity of husband and wife, as recognized in the common law, is founded not merely on a community of goods, but upon the recognized obligation of both to the family and to society. The unit of society is not the individual but the family; and whatever tends to undermine the family, by the irrepealable laws of nature will crumble and destroy the foundations of society and the state. So that the peace and sanctity of the home and family are the ultimate reason for the common law rule. We do not think that we can safely hold by mere infer *325 ence, that the legislature has taken such a long step in the direction of destructive legislation.
The foregoing reasoning applies also to Section 12447, General Code.

Exceptions overruled.

Spear, Shaucic, Price, Johnson and Donahue, JJ,, concur.